# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PIVITAL IP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 20-254-LPS |
| | ) | |
| v. | ) | |
| | ) | |
| TWILIO INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## <u>TWILIO INC.'S MOTION TO DISMISS COMPLAINT</u>

OF COUNSEL:

Michael A. Oblon
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20002
Tel: (202) 879-3939

Michael C. Hendershot
JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
Tel: (650) 739-3939

Dated: April 23, 2020
6676947 / 50135

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Tracey E. Timlin (#6469)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
ttimlin@potteranderson.com

*Attorneys for Defendant Twilio Inc.*

# TABLE OF CONTENTS

I.      Nature and Stage of Proceedings ........................................................................ 1

II.     Summary of the Argument.................................................................................... 1

III.    Statement of Facts ............................................................................................... 3

IV.     Legal Standards.................................................................................................... 6

V.      The '965 Patent Claims Are Invalid Under 35 U.S.C. § 101 As A Matter of Law ............ 7

        A.      *Alice* Step One:  The '965 Patent Claims Are Directed to the Abstract Idea of Selective Access to a Portion of an Electronic Message ....................................... 7

                1.      Numerous Decisions From The Federal Circuit and This Court Confirm the '965 Patent's Claims are Directed to an Abstract Idea ........................ 7

                2.      Pivital's Claims Are Directed to Long Established Practices in Handling Messages ............................................................................... 11

                3.      Pivital's Complaint Highlights That The Claims Merely Automate Manual Advertising Practices the Federal Circuit Has Held Abstract.................. 12

        B.      *Alice* Step Two:  The Recited Limitations Do Not Transform the Claims into Significantly More Than the Abstract Idea.......................................................... 13

                1.      The '965 Patent Relies on Using Generic Computers in Conventional Ways ................................................................................................... 13

                2.      Any Purported Efficiencies of the '965 Patent Are the Expected By-Product of Applying an Abstract Idea to a Computer.............................. 15

                3.      Pivital's Complaint Highlights that its Claims Lack an Inventive Step ... 17

        C.      Claim 1 is Representative of the '965 Patent Claims ........................................... 17

VI.     Post-Suit Damages are Unavailable on the Expired '965 Patent and Pivital Alleges No Plausible Basis for Pre-Suit Damages as to its System Claims ........................................ 18

VII.    Conclusion ............................................................................................................ 20

**TABLE OF AUTHORITIES**

Page

CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)...........................................................................20

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)......................................................................2, 8, 9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).................................................................................. passim

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017)...........................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................6

*British Telecomms. PLC v. IAC/InterActiveCorp*,
  381 F. Supp. 3d 293 (D. Del. 2019)............................................................. passim

*Citrix Sys., Inc. v. Avi Networks, Inc.*,
  363 F. Supp. 3d 511 (D. Del. 2019)................................................................6, 15

*Customedia Technologies, LLC v. Dish Network Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020)...................................................................2, 13, 14

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018)...........................................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)...................................................................7, 14, 17

*Epic IP LLC v. Backblaze, Inc.*,
  351 F. Supp. 3d 733 (D. Del. 2018).....................................................................20

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
  — F.3d —, No. 2018-2003, 2020 WL 1856498 (Fed. Cir. 2020) .........................2, 8

*Express Mobile, Inc. v. Liquid Web, LLC*,
   C.A. No. 18-cv-01177-RGA, 2019 WL 1596999 (D. Del. Apr. 15, 2019) ...........................19

*Grecia v. Bank of New York Mellon Corp.*,
   No. 19-CV-2810 (VEC), 2020 WL 1244125 (S.D.N.Y. Mar. 13, 2020) .........................11, 12

*Inline Connection Corp. v. AOL Time Warner Inc.*,
   465 F. Supp. 2d 312 (D. Del. 2006) ...................................................................................18

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)......................................................................................2, 13

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (2016)..........................................................................................12, 15, 16

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997)...........................................................................................6, 19

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
   696 Fed. App'x 1014 (Fed. Cir. 2017).................................................................................9

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)...........................................................................................8

*Reklam v. Bellator Sport Worldwide LLC*,
   C.A. No. 16-cv-285, 2017 WL 5172397 (D. Del. Nov. 8, 2017) ...........................................19

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)...........................................................................................6

*WhitServe LLC v. Donuts Inc.*,
   390 F. Supp. 3d 571 (D. Del. 2019)........................................................................6, 15, 16

**STATUTES & RULES**

35 U.S.C. § 101............................................................................................................... passim

35 U.S.C. § 287(a) ...................................................................................................3, 18, 20

Fed. R. Civ. P. 8(a) ..............................................................................................................19

Fed. R. Civ. P. 11(b) ............................................................................................................19

Fed. R. Civ. P. 12(b)(6) .............................................................................................1, 6, 12, 19

## I. Nature and Stage of Proceedings

Plaintiff Pivital IP LLC ("Pivital") is asserting expired U.S. Patent No. 6,636,965 (the "'965 patent") in a series of lawsuits in this district, including this case against Defendant Twilio Inc. ("Twilio"). (*See* D.I. 1, Ex. A [hereinafter '965 patent].) In related case No. 1:19-cv-02176-LPS, there remains pending Defendant ActiveCampaign, LLC's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), based in part on patent-ineligible subject matter under 35 U.S.C. § 101. Twilio joins ActiveCampaign, LLC's pending motion as it pertains to § 101 and supplements the arguments therein with additional bases for why the '965 patent fails the threshold test of patent eligibility.[1] In addition, Twilio moves to dismiss infringement claims that are addressed to system claims of the '965 patent.

## II. Summary of the Argument

The claims of the '965 patent are invalid under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The claims are directed to the abstract idea of selective access to portions of an electronic message. The claims recite admittedly generic and conventional computing techniques and components and add nothing that transforms the claims into significantly more than the abstract idea to which they are directed. Indeed, the claims closely parallel numerous of those held patent-ineligible by the Federal Circuit and this Court and Pivital's lawsuit should be similarly dismissed.

***First***, as to *Alice* Step One, the claims are directed to an idea that has been repeatedly and consistently recognized as abstract. Representative claim 1 recites a method by which a user creates and delivers a "common message" and a "comment" portion that is accessible to only a

---

[1] Twilio agrees with the arguments already set forth by ActiveCampaign, LLC, including the functional, results-oriented nature of the claim language, but does not repeat those arguments in this Memorandum for the convenience of the Court.

subset of those recipients. The Federal Circuit and this Court have held such selective or customized access to electronic information or resources to be an unpatentable abstract idea in a number of cases.[2] The claims of the '965 patent are no different. Indeed, Pivital's infringement allegations here reinforce that the claims largely automate practices that the '965 patent correctly admits had been done manually.

**Second**, as to *Alice* Step Two, the elements of the '965 patent claims—individually or as an ordered combination—do not transform the claims into significantly more than the abstract idea of selective access to portions of an electronic message. Providing access to a "comment" portion of a message does not become patent eligible simply by sending them via an "electronic messaging system." *See Customedia Technologies, LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020). There is nothing unconventional about the claimed "electronic messages," creation and checking of "address lists," or a generic "icon or instruction." The '965 patent's specification confirms that the method involves only generic components, such as "personal computers," "an e-mail server," and a "local area network or a wide area network such as the Internet" or "a voicemail system that is typically included as part of a private branch exchange (PBX) telephone system" and "telephones" with "voice mail messages." ('965 patent, 2:43-47, 2:53-58.) The '965 patent's recitation of "encryption" is likewise generic and conventional, as neither the claims nor the specification identify any encryption or decryption protocols or techniques or other technological information. The specification's limited reference to increased efficiency and bandwidth is

---

[2] *See, e.g.*, *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, — F.3d —, No. 2018-2003, 2020 WL 1856498 (Fed. Cir. 2020) (selective access); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016) (targeted advertising); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) (content tailoring); *British Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 312 (D. Del. 2019) (selective access and tailored content).

unsupported by the claims and cannot be squared with Pivital's Complaint. The '965 patent claims are invalid under 35 U.S.C. § 101 as a matter of law.

***Third,*** Pivital's Complaint suffers from another deficiency. Pivital does not limit its infringement allegations to method claim 1. Yet, Pivital fails to plausibly allege a basis for *any* relief under the '965 patent's system claims. The '965 patent is expired, precluding any post-suit damages or relief, and Pivital has alleged no facts supporting pre-suit damages for system claims 6-12. Rather than allege such facts, Pivital as the patent owner summarily alleges "on information and belief" that the marking requirements of 35 U.S.C. § 287(a) have been satisfied. This is plainly insufficient.

For these reasons and the reasons asserted by ActiveCampaign, LLC, in its motion to dismiss, the Complaint should be dismissed with prejudice for failure to state a claim.

## III.  Statement of Facts

Twilio is a San Francisco-based company incorporated in Delaware. Pivital, a Texas limited liability company, formed in October 2019. Having acquired the '965 patent after its expiration, Pivital now asserts it against Twilio and others.

The '965 patent identifies the "present invention" as "a message processing system that allows a user to attach comments to a common message for general distribution, wherein the comments are to be received by fewer than all recipients of the common message." ('965 patent, 2:34-38.) Claim 1 recites a method directed to this concept:

> 1. A method of sending messages in an electronic messaging system, comprising:
>
> creating an electronic message with a common message portion that is to be delivered to a number of recipients,
>
> creating a comment to said common message portion in said electronic message, wherein said comment can be received only by a selected subset of said number of recipients;

determining said number of recipients and said selected subset by creating a first address list that specifies said number of recipients and creating a second address list that specifies said selected subset;

delivering said common message portion and said comment to said number of recipients by:

encrypting said comment;

transmitting said common message portion and said encrypted comment to said number of recipients; and

determining whether a particular recipient is allowed to decode said encrypted comment by transmitting an icon or instruction with said common message portion and said encrypted comment and determining if said particular recipient has selected the icon or     performed the instruction and if so, determining if said particular recipient is on said second address list of said number of recipients   selected to review said comment.

(*Id.* at 5:9-35.)

The '965 patent's brief specification—two pages and four figures—discloses that the "message processor," central to the purported invention, may be "an e-mail server" or "a voicemail system that is typically included as part of a private branch exchange (PBX) telephone system." (*Id.* at 2:43-47, 2:53-58.)   The specification further provides that the patent's "user stations" generically are "personal computers that are logically connected to the e-mail server by a local area network or a wide area network such as the Internet" or "telephones with which voice mail messages may be entered or received."   (*Id.*)   Consistent with these genericized descriptions, Figure 1 of the '965 patent, reproduced below, depicts these components of a "message processing system according to the present invention" (*id.* at 2:17) as boxes without further detail:



**FIG. 1**

The remaining figures are at a comparable level of generality. For example, Figure 2 depicts "a flow chart of the steps performed by a user to create a message having comments that are transmitted to fewer than all of the recipients of a common portion of the message." (*Id.* at 2:19-22.) Although Figures 2-4 reference comments being "encrypted," the specification does not explain how any data is stored, encrypted, or decrypted, or point to any protocol for doing so. Nor does the specification suggest that an email server or voicemail server would be altered from its conventional configuration to function in a different manner at any stage of the process.

The '965 patent acknowledges that sending messages via e-mail and voicemail systems was well known. (*Id.* at 1:11-14.) It likewise acknowledges that adding selectively accessible "comments" to common messages had been done manually. (*Id.* at 1:18-28.)

The patent concludes with 12 claims, of which claims 1, 6, and 11 are independent. Pivital alleges that Twilio infringes "at least" claim 1. (D.I. 1, ¶ 16.) As to the claimed selectively accessible "comment" in a message, Pivital's allegations repeatedly point to a personalized addition to a common message, such as the recipient's "name" and "address," or an insert targeted

to a group based on location or interest: "said comment can be received only by a selected subset (*e.g.*, categorically differentiated users based on city, country, interest)." (*Id.* 1, ¶¶ 19, 20, 22, 23.)

## IV.    Legal Standards

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a claim must allege sufficient facts such that, when accepted as true, state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court may disregard any legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

As a question of law, patent eligibility may often be resolved on the pleadings. As the Federal Circuit explains, patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts . . . require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 575 (D. Del. 2019) (noting it is "well-settled" to determine patent eligibility at motion to dismiss stage and collecting cases).

When evaluating patent eligibility, a court first must determine whether a claim is "directed to" a patent-ineligible concept, such as an abstract idea ("step one"). *Id.* at 217. If so, the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application" that is significantly more than a claim to the abstract idea ("step two"). *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). An abstract idea itself, "no matter how beneficial," cannot serve as the inventive concept for step two. *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 523 (D. Del. 2019).

**V.     The '965 Patent Claims Are Invalid Under 35 U.S.C. § 101 As A Matter of Law**

The '965 patent claims are directed to the abstract idea of selective access to a portion of an electronic message and the recited limitations do not recite anything unconventional that would amount to significantly more than the abstract idea itself.  This result is clear from the claim language and reinforced by the specification and the allegations in Pivital's Complaint.  As discussed below, the Court should dismiss the Complaint here.

**A.     *Alice* Step One:  The '965 Patent Claims Are Directed to the Abstract Idea of Selective Access to a Portion of an Electronic Message**

The § 101 inquiry begins by "looking at the 'focus' of the claims, their 'character as a whole," to assess whether they are directed to an abstract idea.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016).  For this step, "the specification must always yield to the claim language" when identifying "the true focus of a claim."  *ChargePoint, Inc.*, 920 F.3d at 766.

On its face, claim 1 is directed to selective access to a portion of an electronic message.  Claim 1 recites "creating" a common message and comment, "determining" the recipients by creating a list, "delivering" the common message and comment to the recipients on the list, and "determining" whether a given recipient may access the comment by checking a list of a subset of the recipients.  (*Id.* at 5:9-35.)  Consistent with claim 1, the specification similarly describes the "present invention" as this same abstract idea:  "a message processing system that allows a user to attach comments to a common message for general distribution, wherein the comments are to be received by fewer than all recipients of the common message."  (*Id.* at 2:34-38.)

**1.     Numerous Decisions From The Federal Circuit and This Court Confirm the '965 Patent's Claims are Directed to an Abstract Idea**

Controlling precedent confirms that Pivital's claims are directed to an ineligible abstract idea.  Four decisions are illustrative.

**First**, the Federal Circuit recently held comparable claims invalid in *Ericsson*, 2020 WL 1856498. The claims at issue in *Ericsson* recited "[a] system for controlling access to a platform," including "an access controller for controlling access," "an interception module for receiving a request . . . to access the software services component," and "a decision entity for determining if the request should be granted." *Id.* at *5-6. The Federal Circuit determined that the claims were directed to "the abstract idea of controlling access to, or limiting permission to, resources." *Id.* at *6. That the claims required computer components and were "written in technical jargon" did not make the idea any less abstract. *Id.* The court reasoned that "[c]ontrolling access to resources is exactly the sort of process that can be performed in the human mind, or by a human using a pen and paper." *Id.* (internal quotation marks omitted).

Here, the '965 patent acknowledges that the result of the method of claim 1 was previously performed manually by humans and claim 1 of the '965 patent similarly is directed to the abstract idea of controlling access to comments in a message. As the specification reveals, the recited "electronic messaging system" is a generic e-mail server with users' personal computers or a voicemail system with users' telephones. And Figure 2 makes explicit that many of the claimed steps are "performed by a user." ('965 patent, 2:19.) The '965 patent's generic invocation of "encryption" does not alter the claims' nature any more than the "technical jargon" did in *Ericsson*. Similarly, the Federal Circuit has found encoding and decoding to be abstract ideas. *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

**Second**, in *Affinity Labs*, the patent disclosed a method of targeted advertising in which media content was streamed to a user's wireless device based on demographic information about the user. *See* 838 F.3d at 1267. The claim recited a "media managing system," "collection of instructions," "network based delivery resource," and "customized user interface." *Id.* The Federal Circuit noted that although the patent described the "function of streaming content to a

wireless device," it failed to describe any "specific means for performing that function." *Id.* at

1269. Accordingly, the Federal Circuit held that "the concept of delivering user-selected media

content to portable devices is an abstract idea." *Id.*

As in *Affinity Labs*, the claims here are directed to the selective delivery of content via

electronic messages and the claims here are no less abstract. Indeed, as detailed further below,

Pivital's allegations equate its claims to the sort of targeted advertising based on demographic

information at issue in *Affinity Labs*. Moreover, like the streaming of content in *Affinity Labs*,

the '965 patent generically references encryption and decryption without claiming or disclosing

any "specific means for performing that function." *Id.*

***Third***, in *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 Fed. App'x 1014, 1017 (Fed. Cir.

2017), the Federal Circuit concluded that claims directed to providing restricted access to resources

were abstract. Rather than providing a "concrete, specific solution," the claims recited the abstract

process of "(1) receiving identity data from a device with a request for access to resources; (2)

confirming the authenticity of the identity data associated with that device; (3) determining

whether the device identified is authorized to access the resources requested; and (4) if authorized,

permitting access to the requested resources." *Id.*

The '965 patent's claims are similarly directed to selectively restricting access to a portion

of an electronic message. As in *Prism Techs.*, generic references to checking a "list" of recipients

and encryption without a specific solution for how that is accomplished is insufficient under *Alice*.

***Fourth***, this Court's decision in *British Telecommunications*, 381 F. Supp. 3d 293,

addressed claims directed to the abstract ideas of distributing information based on feedback from

people receiving that information, *id.* at 310; tailoring content to a user, *id.* at 311-12; and

providing restricted access to resources, *id.* at 319. Acknowledging that "a computer can perform

such operations more rapidly and efficiently," the Court nonetheless held that applying these abstract ideas to a computer does not "make an abstract idea any less abstract or any more patent-eligible" under step one. *Id.* at 304. And the Court rejected the plaintiff's argument that its touted improvements "such as reducing waste of processing resources, storage, and bandwidth" constituted an improvement to technology rather than an abstract idea. *Id.* at 309. The Court clarified that "sending and displaying voluminous data" is not a technology-specific problem, and the asserted improvements "are generic to any communication system that employs a filtering feedback mechanism, whether conventional or computer-implemented." *Id.* at 309, 313.

*British Telecommunications* highlights why Pivital's claim fails under step one. Tailoring messages to recipients and providing selective access to comments are abstract ideas. Applying these ideas to a computer does not change the outcome or make the ideas "any less abstract." *Id.* at 304. The "problem" of consuming resources in preparing multiple messages is not a technology-specific problem. *See id.* at 313. Nor is Pivital's purported "solution" an improvement to how a computer functions. Customizing portions of a common message for particular recipients (*e.g.*, with a "name" and "address," as Pivital alleges its claims cover) was solved with form letters and mail merge techniques decades ago. And the '965 patent's specification's hoped-for result of reducing bandwidth consumption is common to any system that consolidates the number of messages sent, "whether conventional or computer-implemented." *Id.* at 309.[3] Indeed, the '965 patent acknowledges that the result of method claim 1 was achieved manually and the problem it

_____

[3] Moreover, the '965 patent specification's passing reference to bandwidth is of limited significance. The claim language, not the specification, governs the step one inquiry. *See ChargePoint, Inc.*, 920 F.3d at 766. Claim 1 of the '965 patent provides no suggestion that the invention is directed to reducing bandwidth consumption.

sought to address was merely providing "more convenient and efficient messaging." ('965 patent at 1:43-46.)

At bottom, the focus of the '965 patent claims is a technique by which a person "creates" data and then it is "determined" who can get that data. To the extent that technology is involved, the steps simply are performed via generic and conventional processors and techniques.

### 2. Pivital's Claims Are Directed to Long Established Practices in Handling Messages

Step one asks whether the focus of the claim falls within a patent-ineligible category. *Alice*, 573 U.S. at 217. Here, the method of claim 1 automates a process that could otherwise be performed by a person. As this Court has held, "common practices" that "have been performed by humans for a very long time" are abstract, even when applied to a computer. *British Telecomms.*, 381 F. Supp. 3d at 312 (internal quotation marks omitted). Customizing a common message with comments specific to particular recipients and selectively distributing the customized messages to those recipients is a simple concept that humans have long been performing. Applying this method to a generic computer does not change the analysis.

Here, the claimed method is akin to common, long established practices in distributing general and customized information to recipients. As but one example, organizations have long distributed hard-copy memoranda with general information concerning compensation or employee benefits accompanied by customized information for a particular recipient "encrypted" in a sealed envelope (*e.g.*, containing a recipient's benefits information).[4] Indeed, the '965 patent itself provides a comparable prior practice where the "president of a company" customizes a common

---

[4] Real-world analogies are not dispositive, but nonetheless help to identify when a particular method is not rooted in technology. *See Grecia v. Bank of New York Mellon Corp.*, No. 19-CV-2810 (VEC), 2020 WL 1244125, at *7 (S.D.N.Y. Mar. 13, 2020).

electronic message for selected recipients. (*See* '965 patent at 1:17-28.) The '965 patent simply automates this abstract concept in the context of a generic e-mail or voicemail server. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (2016) (finding an idea to be "long prevalent" even though it "originated in the computer era").[5]

### 3. Pival's Complaint Highlights That The Claims Merely Automate Manual Advertising Practices the Federal Circuit Has Held Abstract

Pival's characterization of the '965 patent claims in its Complaint reinforces that they merely automate long established practices. Pival alleges that Twilio's use of its SendGrid email marketing platform infringes claim 1 and the Complaint attempts to map the elements of Claim 1 to aspects of SendGrid.[6] Pival repeatedly equates the claimed selective access to the "comment" portion of a message to targeting advertising techniques:

- "the step of creating an electronic message (*e.g.*, *a marketing email*) with a common message portion (*e.g.*, the base/default portion of a marketing email) that is to be delivered to a number of recipients (*e.g.*, customers or prospective customers on an email list)"

- "the step of creating a comment (*e.g.*, dynamic components of the message) to said common message . . . wherein said comment can be received only by a selected subset (*e.g.*, *categorically differentiated users based on city, country, interest*) . . . ."

---

[5] Another apt analogy is provided in *Grecia*. 2020 WL 1244125, at *7. There, the claim recited storing information about permissions and identity, processing access requests for digital information, and allowing a user to access licensed information across different devices. *Id.* Claim 1 of the '965 patent likewise involves creating "address list[s]" of recipients authorized to access comments and "determining whether a particular recipient is allowed to" access the comments. ('965 patent, 5:18-35.) The *Grecia* court analogized such activity to an officer dealing with access to a military base. 2020 WL 1244125, at *7. Here, as in *Grecia*, "humans can implement the exact process Claim 1 describes without any reference to or reliance upon computers." *Id.*

[6] While Twilio disputes whether Pival has plausibly alleged (or can allege) facts supporting infringement, Twilio is mindful of decisions from this district applying *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018) and has not challenged Pival's infringement allegations in this motion. In any event, Pival's factual allegations generally must be accepted as true at this stage and are properly considered on a Rule 12 motion.

*See, e.g.*, D.I. 1, ¶¶ 18, 19 (emphasis added). Pivital's Complaint likewise points to a recipient's "name" and "address" information as the claimed "comment" and includes a screenshot of a SendGrid web page that provides: "Bring your contacts into Marketing Campaigns with ease so you can send targeted, relevant, and wanted email." *Id.*, ¶ 19.

The Federal Circuit has recognized the sort of targeted marketing techniques that Pivital equates to its claims are well-established practices and an abstract idea. In *Capital One Bank*, the court held that tailoring content based on user information, such as where a user lives or what time of day the user views the content, is an abstract idea. *See* 792 F.3d at 1369. The court traced this abstract idea to the well-established practice of providing different newspaper inserts for different neighborhoods. *Id.* at 1369-70; *see also Customedia*, 951 F.3d at 1366 (addressing "the abstract idea of delivering targeted advertising"). For this and all of the foregoing reasons, claim 1 is directed to an abstract idea.

**B.** ***Alice* Step Two: The Recited Limitations Do Not Transform the Claims into Significantly More Than the Abstract Idea**

Because the asserted claims are directed to the abstract idea of creating a message and determining who can access it, the claims are invalid unless they embody an "inventive concept" that is "significantly more" than the abstract idea under step two. *Alice*, 573 U.S. at 217-18. The patent's generic and conventional components provide no such inventive concept individually or as an ordered combination. The conventional components and purported efficiency of beginning with a common message and customizing it for different recipients—which has long been realized with or without a computer—do not amount to significantly more than the abstract idea itself.

**1. The '965 Patent Relies on Using Generic Computers in Conventional Ways**

In the context of computer-implemented inventions, there is no inventive concept when "[n]othing in the claims, understood in light of the specification, requires anything other than [an]

off-the-shelf, conventional [processor networked with generic computers]." *Elec. Power Grp.*, 830 F.3d at 1355. And there is no inventive concept when method claims simply disclose routine steps to carry out the abstract idea. *See Customedia*, 951 F.3d at 1366 (holding that the claims had no inventive concept because "[a]side from the abstract idea of delivering targeted advertising, the claims recite only generic computer components").

Claim 1 of the '965 patent recites entirely generic and conventional technology. As the patent acknowledges, "electronic messaging system[s]" and "electronic message[s]" were well known. The use of "address list[s]," encryption, and a generic "icon or instruction" were similarly conventional and nothing in the '965 patent suggests otherwise.

Indeed, the limited discussion of anything technological in the '965 patent's short specification confirms the limitations of claim 1 are generic and conventional computing terms that do not add an inventive concept. As depicted in Figure 1 and explained in the specification, the patent teaches a "method of sending messages in an electronic messaging system." ('965 patent, 2:17.) The system uses generic computers (user stations 22a-22n) that function to send or receive messages from a conventional e-mail or voicemail server (message processor 20). (*Id.* at 2:40-62.) A user carries out the method simply by typing or recording a message and designating recipients; in turn, the message processor "routes the message to the recipients." (*Id.*) The limitations of claim 1—"creating" messages with information, "encrypting" information, and "determining whether a particular recipient is allowed to decode" it—are generic and decades old steps when handling secure information. These limitations are inadequate to transform the abstract idea of claim 1 into patent-eligible subject matter.

*Alice* instructs that a court look at claim elements "both individually and 'as an ordered combination' " for step two. 573 U.S. at 217 (quoting *Mayo*, 566 U.S.at 78-79). But even the

order of elements in claim 1 is conventional. The method proceeds as expected: a user creates a common message that is then customized with an additional "comment" portion for particular recipients, the user determines who the recipients will be, the user delivers the message and customized comments to some or all of the recipients, and access to the customized comments is limited to intended recipients by checking an address list. Nothing about this order amounts to being "significantly more" than the abstract idea itself, nor does the specification suggest otherwise.

### 2. Any Purported Efficiencies of the '965 Patent Are the Expected By-Product of Applying an Abstract Idea to a Computer

Under step two, this Court has held that "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept." *WhitServe LLC*, 390 F. Supp. 3d at 580; *see also Personalized Media Comm'ns*, 161 F. Supp. 3d at 338 (reaching same conclusion). Instead, for an inventive concept to be present, the claims must be directed to "an improvement in the computer technology itself." *See WhitServe LLC*, 390 F. Supp. 3d at 581.

Here, the sparse mention in the patent's background about making messaging more convenient, efficient, or desirable cannot resurrect the claims. ('965 patent, 1:43-46.) These efficiencies merely result from applying the method to a computer. *See WhitServe LLC*, 390 F. Supp. 3d at 580. And, as reflected in the figures, specification, and claim language, the claimed method does not alter the internal function of any particular computer component. *See id.* at 581. Whether the abstract idea pertains to an alleged improvement in delivering e-mails or voicemails is of no moment, because "no matter how beneficial when applied in a technical context, [the abstract idea] cannot provide an inventive concept."[7] *Citrix Sys.*, 363 F. Supp. 3d at 523.

---

[7] In this same vein, novelty and non-obviousness do not establish an inventive concept. *See Symantec*, 838 F.3d at 1316 ("[T]he novelty of any element or steps in a process, or even of the

The '965 patent's passing reference to improving bandwidth also cannot save the claims. The patent mentions that separately sending messages to different distribution lists "can also create bandwidth issues in some types of messaging systems on, for example, local area networks." ('965 patent, 1:41-42.) Of course, preparing fewer messages generally requires less resources, whether performed on a computer or by hand. However, nothing about this supposed benefit reveals an improvement "in the computer technology itself." *WhitServe LLC*, 390 F. Supp. 3d at 581. And even assuming the inventors intended to solve a bandwidth problem, the patent does not describe how—or even if—the inventors solved this problem. Indeed, it is unclear how any efficiency is realized, particularly in the context of appending an encrypted portion to a voicemail message to all recipients, including those who cannot access it. Thus, it is unsurprising that the '965 patent merely suggests potential efficiency rather than describing it as essential to the purported invention or addressing it in the claims.

In any event, there is no mention of "bandwidth" in claim 1 or any other claim of the '965 patent. Nor do the claims mention a technological improvement for a network. Because reduced bandwidth consumption is not addressed by the claims, this speculative benefit cannot serve as the inventive concept. *See Symantec*, 838 F.3d at 1316 (finding that, regardless of whether claimed method of screening e-mails for unwanted content mooted a "volume problem," there is no inventive step because the claims did not contain any limitations addressing those benefits).

---

process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." (quoting *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981)); *see also British Telecomms.*, 381 F. Supp. 3d at 310 ("[T]hat a patent application may be patentable over prior art does not mean that it is directed to patent-eligible subject matter.").

### 3. Pivital's Complaint Highlights that its Claims Lack an Inventive Step

Again, Pivital's own Complaint undermines the validity of the '965 patent. Pivital asserts that Twilio infringes because SendGrid allows a user to send a "default message" consisting of a logo and address and provides the ability to customize an email message based on a user's location or interest. Missing from Pivital's description, however, is any indication that SendGrid helps reduce the volume of messages being sent. Indeed, according to Pivital's allegations, the claims encompass including individualized comments (*e.g.*, name and address) in the message sent to each and every recipient on an address list. Such individualized messages runs counter to the purported efficiency that is hinted at (but unclaimed) by the '965 patent.

Because claim 1 of the '965 patent is directed to an abstract idea and does not add significantly more to that idea, the claim is not patent eligible under 35 U.S.C. § 101.

### C. Claim 1 is Representative of the '965 Patent Claims

In assessing § 101, a court may evaluate a representative claim rather than reviewing each asserted claim. *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016). Here, claim 1 is the only one addressed by the Complaint and is representative of the claims in the '965 patent. Like claim 1, the other independent claims are also directed to selective access to a portion of an electronic message. That claims 6 and 11 are ostensibly framed as system claims is of no moment. *See Alice,* 573 U.S. at 214. Nor do the dependent claims transform their nature, as they merely recite generic or conventional components in the context of the same abstract idea. *See* '965 patent, Claims 2, 7, and 12 (passwords); Claims 3 and 8 (a generic "applet- or mini-program"); Claims 4 and 9 ("an e-mail server" and "computers"); Claims 5 and 10 (generic "multimedia messaging system"). With respect to patent eligibility, there is no "distinctive significance" between these claims and the Court may rely on claim 1 as a representative. *See Elec. Power Grp.*, 830 F.3d at 1352.

**VI.    Post-Suit Damages are Unavailable on the Expired '965 Patent and Pivital Alleges No Plausible Basis for Pre-Suit Damages as to its System Claims**

If the Court does not grant Twilio's motion as to patent ineligibility, the Court should dismiss Pivital's infringement claims based on the '965 patent's system claims. Pivital has not plausibly alleged a basis for any relief on its expired patent and would effectively be seeking an advisory opinion as to those claims. Pivital's conclusory allegations about marking are insufficient to support a request for past damages as to its system claims (claims 6-12), which would be the only damages that Pivital could seek on an expired patent.

Under 35 U.S.C. § 287(a), a patentee may recover damages from the time when it marks its "patented article," thus putting the public on constructive notice of the patent. If a patentee asserts apparatus or system claims, it must prove that it complied with the marking requirement to obtain pre-suit damages. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017); *Inline Connection Corp. v. AOL Time Warner Inc.*, 465 F. Supp. 2d 312, 324 (D. Del. 2006).

The '965 patent includes both method claims (claims 1-5) and system claims (claims 6-12). Pivital did not limit its allegations to method claims but rather alleges direct infringement of "*at least* claim 1." (D.I. 1, ¶ 16.) Despite this, Pivital pleads no facts plausibly supporting that marking obligations have been complied with so as to support pre-suit damages on the system claims, and pre-suit damages are the only relief that could be granted due to the patent's expiration in 2019.

Rather, Pivital alleges only on "*information and belief*" that "Defendant has had at least constructive notice of the '965 patent by operation of law and marking requirements have been complied with." (D.I. 1, ¶ 25 (emphasis added).) Despite being the patent owner, Pivital

seemingly does not know whether the marking requirements have been satisfied.[8] Pivital provides no supporting facts for this conclusory statement. At the motion to dismiss stage, this Court "need not credit a complaint's bald assertions or legal conclusions." *Morse*, 132 F.3d at 906 (internal quotation marks omitted). "Moreover, a plaintiff may plead on information and belief only where . . . the requisite factual information is peculiarly within the defendant's knowledge or control" and "there are no boilerplate and conclusory allegations and [p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *Reklam v. Bellator Sport Worldwide LLC*, C.A. No. 16-cv-285, 2017 WL 5172397, at *4 (D. Del. Nov. 8, 2017) (quotation omitted), report and recommendation adopted, C.A. No. 16-cv-285, 2017 WL 5985562 (D. Del. Dec. 1, 2017).

This Court has recognized the importance of properly pleading compliance with marking requirements. In *Express Mobile, Inc. v. Liquid Web, LLC*, C.A. No.18-cv-01177-RGA, 2019 WL 1596999, at *2 (D. Del. Apr. 15, 2019), this Court dismissed the plaintiff's claims as to past damages because the plaintiff did not plead compliance with the marking requirement. The Court explained that "[a] claim for past damages requires pleading compliance with the marking statute—even when compliance is achieved, factually, by doing nothing at all." *Id.*

Here, Pivital has alleged nothing factually about how compliance was achieved, just the unadorned conclusion, on information and belief, that it was. With no plausible basis for damages prior to the patent's expiration, Pivital has not stated a claim showing it is entitled to *any* relief as required by Rules 8(a) and 12(b)(6) for its system claims. Moreover, assertion of a system claim

---

[8] As a plaintiff, Pivital has an obligation to perform a reasonable pre-suit investigation. *See* Fed. R. Civ. P. 11(b) (requiring an attorney to perform "an inquiry reasonable under the circumstances" before presenting a pleading to the court). It is reasonable to expect that a patent owner will first determine whether marking requirements were satisfied before filing a lawsuit that seeks only past damages.

triggers adequate allegations of marking for pre-suit damages on *any* system, apparatus, or method patent claim. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334 (Fed. Cir. 2012) ("Where the patent contains both apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a)." (quoting *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523 1538 (Fed. Cir. 1993))). Accordingly, Pivital should not be permitted to pursue system claims because its inadequate marking allegations would warrant dismissal of the Complaint in its entirety.

## VII. Conclusion

For the foregoing reasons, Twilio respectfully requests that the Court dismiss Pivital's Complaint in its entirety. Because any amendment to the Complaint would be futile, the Complaint should be dismissed with prejudice. *See, e.g.*, *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 735 (D. Del. 2018) (dismissing complaint with prejudice due to patent subject-matter ineligibility). Alternatively, Twilio respectfully requests that the Court dismiss Pivital's infringement claims based on claims 6-12 of the '965 patent because Pivital fails to state a claim upon which relief can be granted for those system claims.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael A. Oblon
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20002
Tel:  (202) 879-3939

Michael C. Hendershot
JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
Tel:  (650) 739-3939

Dated:  April 23, 2020
6676947 / 50135

By:  */s/ Bindu A. Palapura*_____
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Tracey E. Timlin (#6469)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com
    ttimlin@potteranderson.com

*Attorneys for Defendant Twilio Inc.*