**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **PIVITAL IP LLC,** | |
| Plaintiff, | C.A. No. 20-254-LPS |
| v. | **PATENT CASE** |
| **TWILIO INC.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF PIVITAL IP LLC'S OPPOSITION TO DEFENDANT
TWILIO INC.'S MOTION TO DISMISS COMPLAINT**

May 28, 2020

OF COUNSEL:

David R. Bennett
(Admitted *pro hac vice*)
DIRECTION IP LAW
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
Email: dbennett@directionip.com

Jimmy Chong (#4839)
CHONG LAW FIRM
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (877) 796-4627
Email: chong@chonglawfirm.com

*Attorneys for Plaintiff Pivital IP LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iii

TABLE OF EXHIBITS ................................................................................ v

I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................. 1

II.  SUMMARY OF THE ARGUMENT .............................................. 1

III.  CONCISE STATEMENT OF THE FACTS ..................................... 2

    A.  Prior Art Methods for Sending Messages to Many Recipients Were Inconvenient and Created Bandwidth Issues .......................................... 2

    B.  The Claims of the '965 Patent Disclose an Improved Way of Sending Electronic Messages with Different Content to Different Groups of People ......... 3

    C.  The Specification Explains the Improvements of the Claimed Invention Over Prior Art Electronic Messaging Systems and Discloses Exemplary Embodiments of the Claimed Invention .................................................. 4

    D.  The Prosecution History Explains the Unconventional and Non-Generic Features of the Claimed Inventions ....................................................... 5

IV.  STATEMENT OF THE LAW ....................................................... 6

V.  ARGUMENT ............................................................................ 8

    A.  The Claims in the Patent-in-Suit do not Recite an Abstract Idea ............... 8

        1.  The Asserted Claims Improve the Efficiency and Load on a Messaging Network through an Improvement to the Structure and Operation of Messages .......................................... 9

        2.  Defendant's Cases Are Distinguishable from Asserted Claim 1 .............. 10

        3.  Defendant's Analogy of Sending a Hard-Copy Memo Accompanied by a Separate Envelope is Off Point Because it is the Same as the Flawed Prior Art Described in the '965 Patent .................... 14

        4.  Defendant's Contention that Claim 1 is Merely Automating a Manual Advertising Practice Only Addresses Two Limitations .............. 15

B.     The Claims of the '965 Patent Have Material, Non-Generic Limitations Including A Specific Message Structure and Operation for Determining Whether the Recipient Can Review the Comment ................................16

      1.     Claims are Patent Eligible Even if They Use Generic, Off-the-Shelf Computer Components .................................................................. 16

      2.     The Efficiencies of the Claimed Invention Result from Improved System Functionality .............................................................................. 17

C.     Claim 1 is Not Representative of the Claims of the '965 Patent ...........................19

D.     Pivital Sufficiently Pled Marking Under 35 U.S.C. §287......................................20

CONCLUSION......................................................................................................................... 20

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed.Cir. 2018).................................................................... 7, 8

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
   838 F.3d 1266 (Fed.Cir. 2016)...................................................................... 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014)........................................................................ 6, 7, 16

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
   876 F.3d 1350 (Fed.Cir. 2017)...................................................................... 20

*Bandag, Inc. v. Gerrard Tire Co.*,
   704 F.2d 1578 (Fed.Cir. 1983)...................................................................... 20

*Bascom Global Internet Servs. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed.Cir. 2016)................................................................... 7, 18

*British Telecomms. PLC v. IAC/InterActiveCorp*,
   381 F.Supp.3d 293 (D.Del. 2019)............................................................. 12, 13

*Cellspin Soft, Inc. v. Fitbit*, Inc.,
   927 F.3d 1306 (Fed.Cir. 2019)....................................................................... 6

*Commil USA, LLC v. Cisco Sys.*,
   135 S.Ct. 1920 (2015)................................................................................ 6

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   880 F.3d 1356 (Fed.Cir. 2018)......................................................... 9, 10, 13, 14

*Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*,
   559 F.3d 1308 (Fed.Cir. 2009)...................................................................... 20

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed.Cir. 2018)........................................................... 10, 13, 14

*DDR Holdings, LLC v. Hotels.com*,
   773 F.3d 1245 (Fed.Cir. 2014)................................................................. passim

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
   888 F.3d 1256 (Fed.Cir. 2018)...................................................................... 19

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed.Cir. 2016)................................................................. passim

*Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*,
   2020 U.S. App. LEXIS 11702 (Fed.Cir. Apr. 14, 2020) ................................... 11

*Finjan, Inc. v. Blue Coat Sys.*,
   879 F.3d 1299 (Fed.Cir. 2018)................................................................. passim

*Hanson v. Alpine Valley Ski Area, Inc.*,
   718 F.2d 1075 (Fed.Cir. 1983)............................................................. 20

*Intellectual Ventures I LLC v. Symantec Corp.*,
   2015 U.S. Dist. LEXIS 6399 (D.Del. Jan. 21, 2015)............................. 20

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed.Cir. 2019)............................................................. 16

*Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*,
   132 S.Ct. 1289 (2012)....................................................................... 6, 7

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed.Cir. 2016)...................................................... passim

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S.Ct. 2238 (2011) ........................................................................... 6

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
   696 Fed.App'x 1014 (Fed.Cir. 2017)................................................... 12

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)............................................................ 11

*Sound View Innovations, LLC v. Delta Air Lines, Inc.*,
   2020 U.S. Dist. LEXIS 59025 (D.Del. Apr. 3, 2020)........................... 19

*Uniloc USA, Inc. v. LG Elecs. USA*,
   2020 U.S. App. LEXIS 13876 (Fed.Cir. Apr. 30, 2020) .................. passim

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed.Cir. 2017)....................................... 6, 8, 13, 18

**Statutes**

35 U.S.C. §101........................................................................................ passim

35 U.S.C. §282.............................................................................................. 6

35 U.S.C. §287........................................................................................ 2, 20

**Rules**

Rule 12(b)(6), Fed.R.Civ.P. ............................................................ 6, 8, 18, 20

# TABLE OF EXHIBITS

Exhibit A      United States Patent No. 6,636,965 (""965 patent") (D.I. 1, Ex. A)

Exhibit B      Office Action in Application No. 09/282,479 ('965 patent) dated December 16, 2002 (D.I. 1, Ex. B)

Exhibit C      Response to Office Action in Application No. 09/282,479 ('965 patent) dated March 13, 2003 (D.I. 1, Ex. C)

Exhibit D      Notice of Allowability in Application No. 09/282,479 ('965 patent) dated June 3, 2003

Plaintiff Pivital IP LLC ("Pivital") hereby files this Opposition to Twilio Inc's ("Twilio" or "Defendant") Motion to Dismiss Complaint (D.I. 10, 11) ("Motion to Dismiss").

# I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Pivital filed its complaint on February 23, 2020, asserting that Twilio's email marketing platform infringed claim 1 of U.S. Patent No. 6,636,965 (the "'965 patent"). (D.I. 1 at ¶¶16-27). Twilio filed its "supplemental" Motion to Dismiss contending that the claims are not patent-eligible under 35 U.S.C. §101. (D.I. 10, 11). Pivital files this response.

# II.    SUMMARY OF THE ARGUMENT

In a peculiar move to get around any page limitation for briefing, Twilio joins a motion to dismiss in a co-pending case, supplements that briefing of the co-pending case with 17 additional pages of new argument on §101, and insists that the Court decide the two motions simultaneously. (D.I. 11 at 1, D.I. 13). Despite this excessive briefing, Twilio has not satisfied its burden of showing that claim 1, or any claim, of the '965 patent is patent-ineligible.

First, Defendant compares the claims of the '965 patent to cases that are distinguishable because they involved claims that lacked detail such that they could cover actions performed in the human mind or lacked any means for performing the claimed method. Unlike the claims in Defendant's cases, the claims of the '965 patent address a specific problem with electronic messaging systems and solves the problem using an electronic message with an unconventional structure and new features that improved the prior art systems. The '965 claims are most like those in *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed.Cir. 2018) and *Uniloc USA, Inc. v. LG Elecs. USA*, 2020 U.S. App. LEXIS 13876 (Fed.Cir. Apr. 30, 2020). The claims recite specific steps that accomplish the desired result using a particular means, namely a new message structure and operation. The claims are therefore patent-eligible under the first step of the §101 analysis.

Second, the claims include an inventive concept. Defendant's core argument is that the

claims cannot be eligible because they only use off-the-shelf components. The Federal Circuit has soundly rejected this argument, otherwise all software claims (such as those at issue here) would be patent-ineligible. Instead, when the claims, such as in the '965 patent, require one or more steps that change the manner in which data is transmitted to improve the operation of the system, the claims are patent-eligible. For example, the claims of the '965 patent require sending messages of different structures and operations to simplify the use of the system and avoid unnecessary network bandwidth consumption. Contrary to Defendant's assertions, neither the structure of the electronic message required for the claimed method nor the operation of messages are generic or conventional. The claims are therefore patent-eligible under the second step of the §101 analysis.

Third, Pivital is not required to allege compliance with the notice requirement under 35 U.S.C. §287 because only method claims are being asserted. Regardless, Pivital's allegation in the complaint is sufficient to satisfy its pleading requirements and the burden of production has therefore shifted to Twilio. Defendant's motion should therefore be denied.

## III.    CONCISE STATEMENT OF THE FACTS

The invention in the U.S. Patent No. 6,636,965 ("the '965 Patent") relates to the field of enhancements to electronic messaging systems. (Ex. A at col. 1:7-10). The claims seek to meet the need of providing a more convenient and efficient electronic messaging system by allowing a general message to be sent with private components for selected recipients. (*Id.* at col. 1:43-46).

### A.    Prior Art Methods for Sending Messages to Many Recipients Were Inconvenient and Created Bandwidth Issues

As e-mail was becoming the communication media of choice because information could be disseminated rapidly to a number of recipients, the electronic messaging systems made it difficult to create customized messages for particular recipients without generating each message individually. (*Id.* at col. 1:11-18). For example, using conventional electronic messaging systems,

a company president that wanted to inform employees of a meeting to be held at a specific time and place would draft and send an email message to all employees informing them of the meeting. (*Id.* at col. 1:18-22). The president may also want certain managers to be prepared to discuss items at the meeting but does not want all employees to know this. (*Id.* at col. 1:22-25). In the past, to inform the managers separately, the systems required the president to create a separate message to send to each manager. (*Id.* at col. 1:25-28). To give the appearance that everyone gets the same message, the main message would be sent to everyone and then the message would be resent with comments to a smaller group, such as the managers. (*Id.* at col. 1:28-31). The method resulted in the message sender using the system to send the same message (with variations to different distributions) multiple times and some recipients would be forced to spend unnecessary time opening and handling multiple messages. (*Id.* at col. 1:31-35). In order to communicate the main message to all employees and to provide additional information to selected groups of those employees, multiple messages with different distribution lists would need to be created, sent, and opened. (*Id.* at col. 1:35-39). This conventional messaging systems were inconvenient to the user and created bandwidth issues in messaging systems. (*Id.* at col. 1:39-42).

As explained below, the inventors therefore invented methods and systems that provide the ability to create customized messages for a recipient by allowing a user to create a single message containing a common message for general distribution and comments that can only be received or reviewed by selected individuals. (*Id.* at col. 1:29 – col. 2:10; col. 3:3-7).

### B. The Claims of the '965 Patent Disclose an Improved Way of Sending Electronic Messages with Different Content to Different Groups of People

The claims of the '965 patent disclose a new way to efficiently create customized electronic messages for sending a general message with private comments for selected recipients. Pivital is asserting claim 1 against Defendant, which is an improved method of sending electronic messages:

1. A method of sending messages in an electronic messaging system, comprising:

creating an electronic message with a common message portion that is to be delivered to a number of recipients;

creating a comment to said common message portion in said electronic message, wherein said comment can be received only by a selected subset of said number of recipients;

determining said number of recipients and said selected subset by creating a first address list that specifies said number of recipients and creating a second address list that specifies said selected subset;

delivering said common message portion and said comment to said number of recipients by:

encrypting said comment;

transmitting said common message portion and said encrypted comment to said number of recipients; and

determining whether a particular recipient is allowed to decode said encrypted comment by transmitting an icon or instruction with said common message portion and said encrypted comment and determining if said particular recipient has selected the icon or performed the instruction and if so, determining if said particular recipient is on said second address list of said number of recipients selected to review said comment.

(Ex. A at col. 5:11-35).

## C. The Specification Explains the Improvements of the Claimed Invention Over Prior Art Electronic Messaging Systems and Discloses Exemplary Embodiments of the Claimed Invention

The specification explains that the prior art was inefficient. (*Id.* at col. 1:43-46; col. 3:39-43). If a user wanted to create a common message for distribution to a number of receipts and add a comment or particular instructions to be delivered to fewer than all the recipients of the common message, it was necessary for users to create and send separate messages: one for the recipients of the common message and a separate one for those receiving the particular instructions or comments. (Ex. A at col. 2:63 – col. 3:3). The invention improved upon the prior art by providing the ability to create customized messages for a recipient by allowing a user to create a single

message containing a common message for general distribution and comments that can only be received or reviewed by selected individuals. (*Id.* at col. 3:3-7).

For example, in one embodiment, a message processor delivers to all recipients the common portion of a message and an encrypted comment intended for fewer than all recipients. (*Id.* at col. 4:9-11; Fig. 4). The message contains an icon or other prompt indicating the encrypted comment in the message. (*Id.* at col. 4:11-13). The recipient can interact with the icon or other prompt to review the encrypted comment. (*Id.* at col. 4:13-16). In another embodiment relevant to unasserted independent claims, a message is sent with only the common portion to all recipients and a message is sent with the encrypted comment along with an icon to a selected subset of recipients. (*Id.* at col. 3:8-32; Fig. 2). The selected subset of recipients can view the encrypted comment by selecting the icon or performing the instruction. (*Id.* at col. 4:13-16). These examples demonstrate that the claimed invention is more convenient and efficient than the prior art. (*Id.* at col. 1:43-46; col. 3:39-43).

**D.     The Prosecution History Explains the Unconventional and Non-Generic Features of the Claimed Inventions**

During the prosecution history of the '965 patent, the applicants and the examiner discussed the unconventional and non-generic features of the claimed invention. The examiner could not find prior art with a message structure including a common message portion, an encrypted comment, and an icon or instruction to determine access to an encrypted comment. (Ex. D at 2; *also* Ex. B at 4, Ex. C at 6). The examiner contended that the prior art disclosed methods that included creating a message that would be sent to all recipients listed and a specific portion of a message may be chosen for sending to a selected subset of recipients but that "the prior art failed to disclose a method of determining if [a] particular recipient has selected the icon or performed the instruction and if so determining if said particular recipient is on said second address list of

said number of recipients selected to review said comment."  (Ex. B at 3, 9 (claim 4 was rewritten as independent claim 1); Ex. D at 2).  Applicant also argued that the claims were patentable over the prior art because none of the prior art disclosed transmitting an icon or instruction along with an encrypted comment to a subset of users and determining whether a user has selected the icon or performed the instruction to decode the encrypted comment.  (Ex. C at 6).  The claims were then allowed by the examiner.

## IV.    STATEMENT OF THE LAW

A patent is presumptively valid and patent eligible under 35 U.S.C. §101. *Cellspin Soft, Inc. v. Fitbit*, Inc., 927 F.3d 1306, 1319 (Fed.Cir. 2019).   The burden of establishing invalidity of any patent claim rests on Defendant.  35 U.S.C. §282; *Microsoft Corp. v. i4i Ltd.*, 131 S.Ct. 2238, 2245 (2011); *Commil USA, LLC v. Cisco Sys.*, 135 S.Ct. 1920, 1929 (2015).  On "a motion to dismiss under Rule 12(b)(6), [ ] all factual inferences drawn from the specification [of the patent] must be weighed in favor of [ ] the non-moving party."  *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261-62 (Fed.Cir. 2017).

Section 101 defines patent-eligible subject matters as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. §101.  All inventions in effect embody, use, or apply laws of nature, natural phenomena, or abstract ideas so an invention is not patent-ineligible merely because it involves one of these. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).  Although patenting a building block of ingenuity risks disproportionately tying up the use of the underlying ideas, integrating the building blocks into something more "pose[s] no comparable risk of pre-emption." *Id.* at 2354-55.

The analysis of whether an invention is directed to an abstract idea under §101 consists of two steps.  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1296-1297

(2012).  The first step "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts."  *Alice*, 134 S.Ct. at 2355.  If the claims are not directed to a patent ineligible concept, then the analysis ends because the claims are patentable under §101.  However, the claims are directed to a patent ineligible concept, then the Court turns to the second step and "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 134 S.Ct. at 2357 (*citing Mayo*, 132 S.Ct. at 1294, 1298).  Even if an invention recites an abstract idea, the invention is patentable if it has "additional features to ensure that the claim is more than drafted to monopolize the abstract idea."  *Id.* (*citing Mayo*, 132 S.Ct. at 1297).  The limitations must be considered both individually and as an ordered combination in this step.  *Id.* at 2355.

If "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks," then software claims are not abstract.  *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1257 (Fed.Cir. 2014).  Similarly, software claims are patent eligible when they "enable[] a computer [ ] system to do things it could not do before."  *Finjan*, 879 F.3d at 1305.  Even if the claims use only generic computers, software claims are patent-eligible if the claims do not preempt the abstract idea on the Internet or on generic computer parts performing conventional activities.  *Bascom Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350-51 (Fed.Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed.Cir. 2016). So long as the novelty is not simply using a computer, "processes that automate tasks that humans are capable of performing are patent eligible if properly claimed."  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed.Cir. 2016).

Although determination of patent eligibility under §101 is a question of law, there can be subsidiary fact questions that must be resolved in route to the ultimate legal determination. *Aatrix*

*Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed.Cir. 2018). For example, whether the claim elements or claimed combination are well-understood, routine, or conventional is a question of fact that may not be able to be answered in response to a motion to dismiss. *Id.*

## V.   ARGUMENT

On a motion to dismiss under Rule 12(b)(6), all factual inferences must be weighed in favor of Pivital. *Visual Memory*, 867 F.3d at 1261-62. When the facts are weighed in Pivital's favor, Defendant has not proven that the claims are invalid under §101 by clear and convincing evidence or, at a minimum, the evidence is insufficient to find against Pivital at the Rule 12(b)(6) stage. Initially, Defendant's alleged abstract idea, "selective access to a portion of an electronic message," is not what the claims are directed to. Instead, the invention provides a new way of sending customized messages using a new message structure and operation that is more convenient, more efficient, and reduces bandwidth issues.

Even if the Court were to adopt Defendant's alleged abstract idea, the claims have additional features to ensure that the claims are more than drafted to monopolize the abstract idea of "selective access to a portion of an electronic message." For example, the claims additionally require transmitting an icon or instruction with the common message portion and encrypted comment, determining if the particular recipient has selected the icon or performed the instruction, and determining if the particular recipient is on a particular address list of recipients selected to review the comment.

### A.   The Claims in the Patent-in-Suit do not Recite an Abstract Idea

The claimed inventions are patent-eligible under the first step of the §101 analysis because they do not recite an abstract idea. When analyzing software claims, the Federal Circuit held that the first step inquiry is "whether the focus of the claims is on the specific asserted improvement in computer capabilities… or instead, on a process that qualifies as an 'abstract idea.'" *Enfish*, 822

F.3d at 1335-36.  The claims here are directed to improved functionality and efficiency of a computer system and do not recite a mathematical algorithm, an economic practice, or a pre-computer business practice.  *Id.* at 1336; *DDR Holdings*, 773 F.3d at 1257; *McRO*, 837 F.3d at 1314.  The claims are patent-eligible because they are rooted in a particular computer technology that necessarily requires a computer system and enable the computer system to do things more efficiently.  *Enfish*, 822 F.3d at 1336*; Finjan*, 879 F.3d at 1305; *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed.Cir. 2018).

1. **The Asserted Claims Improve the Efficiency and Load on a Messaging Network through an Improvement to the Structure and Operation of Messages**

The problem addressed by the invention was how to avoid a sender having to create and send the same electronic message multiple times with variations depending on distribution.  (Ex. A at col. 1:27-39; col. 2:63 – col. 3:3).  This was inefficient and created bandwidth issues.  (*Id.* at col. 1:39-46).  The invention improved upon the prior art by providing a new way of sending customized messages using a new message structure and operation that is more convenient, more efficient, and reduces bandwidth issues.  (*Id.*; *id.* at col. 1:49-58; col. 2:34-38; col. 3:3-7, col. 4:57-61).

Claim 1 is a method that requires creating an electronic message with a new structure.  The electronic message has a common portion received and reviewable by a number of recipients, an encrypted comment that is only reviewable by a subset of the recipients, and an icon or instruction that is used to determine whether a recipient can review the encrypted comment.  (Ex. A at col. 5:11-16, 24-26, 28-30, 32-35).  The claim then uses the electronic message in a particular way.  The claim requires creating a first address list of a number of recipients and a second address list of a subset of the recipients.  (*Id.* at col. 5:17-20).  The electronic message containing the common portion, encrypted comment, and the icon or instruction is sent to the number of recipients.  (*Id.* at

9

col. 5:25-26). It is then determined whether a particular recipient is allowed to decode the encrypted comment by determining if the recipient has selected the icon or performed the instruction and, if so, determining if the recipient is on the second list of recipients selected to view the comment. (*Id.* at col. 5:27-35). This method is more efficient to use because it requires the creation and sending of a single message but with different information viewable by different people, which reduces bandwidth usage in the messaging system. (*Id.* at col. 1:35-58; *see* col. 3:39-43); *Uniloc*, 2020 U.S. App. LEXIS 13876, *8 (*citing Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007-1008 (Fed.Cir. 2018) (claims patent eligible because the invention "improv[ed] computers' functionality as a tool…."); *Core Wireless*, 880 F.3d at 1359-63 (claims patent eligible because the invention "improves the efficiency of using the electronic device….")).

The claims here are like those in *Finjan.* In *Finjan*, the district court held that the claim was intangible and only claimed a result. 879 F.3d at 1305. However, the Federal Circuit reversed the district court holding that the claims recited more than a result because they "recite specific steps—generating a security profile that identifies suspicious code and linking it to a downloadable—that accomplish the desired result." *Id.* The downloadable security profile was a new structure that was used in a new way. *Id.* The claimed security profile approach allowed "access to be tailored for different users and ensures that the threats are identified before a file reaches a user's computer." *Id.* Similarly, in this case, the claims require a new messages structure to allow the message to be tailored for different users and sends and uses the message in a new way to control access to encrypted comments. The claims are therefore patent-eligible.

### 2. Defendant's Cases Are Distinguishable from Asserted Claim 1

Defendant's primary ineligibility argument discusses cases that are distinguishable from claim 1 here. As explained below, claim 1 does not have the flaws found in the claims of Defendant's cases and rather contains limitations that the cases explain makes claims eligible.

In *Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*, 2020 U.S. App. LEXIS 11702 (Fed.Cir. Apr. 14, 2020), the claims were drafted solely functionally, lacked any structural components, and lacked the "specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *Id.* at *20 (*quoting SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)). Ericsson contended that the claims solved a specific computer problem in mobile platform technology; however, the claims did not mention mobile phones or any resource constrained environment and could be performed solely by a human mind or with pen and paper. *Id.* Furthermore, the inventive concept alleged by Ericsson was not found in any asserted claims. *Id.* at *23-24. Unlike the claims at issue in *Ericsson*, claim 1 explicitly states that it is directed to method for electronic messaging and it contains limitations for a specific structure and operation of a new electronic message. (*Supra* §V(A)(1)). In other words, claim 1 cannot be performed by the human mind or with pen and paper. Claim 1 also includes limitations that are described as solving a specific problem with electronic messaging that created a more convenient and efficient messaging system. (Ex. A at col. 1:39-46, col. 2:37-43, col. 5:11-26). Lastly, the patent and prosecution history explained that the structure and operation of the claimed electronic message were not conventional. (*Supra* §III(B); *infra* §V(B)).

In *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266 (Fed.Cir. 2016), the Federal Circuit held that the claims were generic, did not include any particular mechanism, and did not include an inventive solution to any problem in the technological environment. *Id.* at 1269. Similar to *Ericsson*, the claims at issue in *Affinity* only described the function of streaming content but not the means. *Id.* at 1269, 1271. Unlike the claims at issue in *Affinity*, claim 1 at issue here has a specific mechanism for the claimed method: an electronic message having a common portion received by a number of recipients, an encrypted comment that is only reviewable by a subset of

the recipients, and an icon or instruction that is used to determine whether a recipient can review the encrypted comment. (Ex. A at col. 5:11-16, 24-26, 28-30, 32-35). The structure, including the icon/instruction, are necessary to implement the steps of the claimed method and solved problems with prior art systems in a way that improved the system's efficiency and convenience of use. (Ex. A at col. 1:39-46, col. 2:37-43, col. 5:11-26).

In *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 Fed.App'x 1014, 1017-18 (Fed.Cir. 2017), the Federal Circuit held that the claims lacked any concrete or specific solution to a real-world problem and used only routine and conventional steps. The *Prism Techs.* claims recited generic computer hardware running generic computer software that performs the abstract function to the process of restricting access. *Id.* at 1017. Unlike the claims in *Prism Techs.*, claim 1 addresses a specific problem with electronic messaging systems and solves the problem using an electronic message with an unconventional structure and new features. (*Supra* §V(A)(1)). There is also no evidence to support that the claims only use generic components. The prosecution history supports that not only is the structure of the message not generic, but also that the claimed methodology of using the icon/instruction to allow access to the encrypted comment was not generic. (Ex. B at 9; Ex. C at 6; Ex. D at 2).

In *British Telecomms. PLC v. IAC/InterActiveCorp*, 381 F.Supp.3d 293 (D.Del. 2019), the Court found the claims patent ineligible because there was no unconventional structure required and instead the claims covered any way of "distributing information, receiving feedback, and distributing information to a different set of recipients based on that feedback." *Id.* at 310. As explained above, claim 1 here uses an electronic message with an unconventional structure to improve the operation of the electronic messaging system. Contrary to Defendant's argument, the *British* Court did not reject that plaintiff's argument that improvements "such as reducing waste

of processing resources, storage, and bandwidth" constituted an improvement to technology rather than an abstract idea. (D.I. 11 at 10). Instead, the *British* Court said that the claims did not have any inventive improvement because those improvements were "generic to any communication systems that employs a filtering feedback mechanism, whether conventional or computer implemented." 381 F.Supp.3d at 309. In this case, claim 1 uses unconventional electronic message structure with new features and operations that improved the operation and efficiency of prior art electronic mail system. (*Supra* §V(A)(1)). The Federal Circuit recently summarized that it has upheld the patent eligibility of inventions resulting in such improvements on numerous occasions when they were directed to solving problems specific to the realm of computer networks, including eliminating or reducing delay in conventional systems and improving computers' functionality as a tool (as opposed to simply using computers as a tool). *Uniloc*, 2020 U.S. Appl. LEXIS 13876, *6-*9 (*citing DDR Holdings*, 773 F.3d at 1257-58; *Enfish*, 822 F.3d at 1336-39; *Visual Memory*, 867 F.3d at 1259-60; *Data Engine*, 906 F.3d at 1007-1008; *Core Wireless*, 880 F.3d at 1359-63).

Furthermore, the rationale for distinguishing *Enfish* and *Visual Memory* in *British* are reasons why the claims at issue here are patent eligible in view of those cases. *British* distinguished *Enfish* because the *Enfish* patent claimed a specific type of data structure designed to improve storing and retrieving data, which is similar to claim 1 here in which a new electronic message structure is used to improve message distribution. *See* 381 F.Supp.3d at 309. *British* then distinguished *Visual Memory* because the *Visual Memory* invention obviated the need to design a separate memory system for each type of processor and avoided performance problems in prior art memory systems. *Id.* Similar to *Visual Memory*, the invention of claim 1 obviates the need to create separate electronic messages to send to different distributions thereby avoiding performance problems in the electronic messaging network.

### 3. Defendant's Analogy of Sending a Hard-Copy Memo Accompanied by a Separate Envelope is Off Point Because it is the Same as the Flawed Prior Art Described in the '965 Patent

Defendant unsuccessfully attempts to analogize the claimed invention to the "common, long established practices" of "distribut[ing] hard-copy memoranda with general information concerning compensation or employee benefits accompanied by customized information for a particular recipient "encrypted" in a sealed envelope (e.g., containing a recipient's benefits information)." (D.I. 11 at 11). First, Defendant's analogy is the same as the failed prior art: requiring creating two messages—one with general information and a separate one in an envelope with sealed information. (*See* Ex. A at col. 1:18-28). In this real-world situation, there is no need for a solution to improve the efficiency of the system nor are there bandwidth issues for transmitting the message, unlike the prior art electronic messaging systems that had efficiency and bandwidth issues. (*See id.* at col. 1:31-42, col. 3:39-43).

Second, the Federal Circuit has held that it "is not enough [ ] to merely trace the invention to some real-world analogy." *Data Engine*, 906 F.3d at 1011. Just like in *Data Engine*, Defendant "fails to appreciate the functional improvement achieved by the specifically recited [limitations] in the claimed methods." *Id.* The invention is not simply "distributing general and customized information to recipients," (D.I. 11 at 11), instead the invention is a new way of sending customized messages using a new message structure and operation that is more convenient, more efficient, and can reduce bandwidth issues. Such software-based patent claims are patent-eligible when "the focus of the claims is on the specific asserted improvement in computer capabilities." *Enfish*, 822 F.3d at 1335-36. As explained above, the claims focus on the asserted improvements for the delivery of electronic messages that improve the efficiency and bandwidth usage during messaging communications, which necessarily require a computer and are directed to patent-eligible subject matter. *Enfish*, 822 F.3d at 1336; *Finjan*, 879 F.3d at 1305; *Core Wireless*, 880

F.3d at 1362-63.  The claims are therefore patent-eligible because they are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *DDR Holdings*, 773 F.3d at 1257; *also id.* at 1256-57; *Enfish*, 822 F.3d at 1339; *McRO*, 837 F.3d at 1313, 1316.  Defendants analogy, on the other hand, does not address the specifics of the electronic message structure nor the operational improvements.

### 4. Defendant's Contention that Claim 1 is Merely Automating a Manual Advertising Practice Only Addresses Two Limitations

Defendant's contention that claim 1 is merely automating a manual advertising practice is an incomplete argument.  (*See* D.I. 11 at 11-12).  Rather than addressing the claim language, Defendant instead discusses only two of the six paragraphs in the Complaint addressing infringement, which only cover two of the many claim limitations.  (*Id.*).  Other than creating a message and creating a comment, Defendant has no explanation for how the remaining limitations of the claim are automating manual advertising practices.  Furthermore, neither the patent specification nor the claims mention advertising.  Instead, the background of the invention discusses how to reduce the number of electronic messages created and sent when sending general and customized content to overlapping groups of recipients.  (Ex. A at col. 1:14-46).  The prior art required the creation of two messages, whereas the claimed invention only requires the construction of a single message having a specific structure.  (*Id.*; *e.g.*, col. 1:49-59, col. 2:63 – col. 3:3, col. 5:11-25).  Even if the claim could be alleged to automate human tasks, if they are properly claimed and the novelty is not simply using a computer, the claims can be patent eligible.  *McRO*, 837 F.3d at 1313 (claims directed to a process for lip-synching animated characters that used specific rules to automate a previously subjective manual process were patent eligible).

**B.** **The Claims of the '965 Patent Have Material, Non-Generic Limitations Including A Specific Message Structure and Operation for Determining Whether the Recipient Can Review the Comment**

Even if the Court finds that Defendant's alleged abstract idea is applicable to the claims, the claims are patent eligible under the second step of the §101 analysis. The second step of a §101 analysis "examine[s] the elements of the claim [individually and as an ordered combination] to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357.

**1.** **Claims are Patent Eligible Even if They Use Generic, Off-the-Shelf Computer Components**

Defendant substantially overreaches by contending that "there is no inventive concept when '[n]othing in the claims, understood in light of the specification, requires anything other than [an] off-the-shelf, conventional [processor networked with generic computers].'" (D.I. 11 at 13-14 (citation removed)). Under this standard, software claims would be *per se* patent ineligible, which is legally incorrect. *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed.Cir. 2019) ("Since *Alice*, we have found software inventions to be patent-eligible where they have made non-abstract improvements to existing technological processes and computer technology."); *Enfish*, 822 F.3d at 1335-336; *McRO*, 837 F.3d at 1313-16; *Finjan*, 879 F.3d at 1304-1306; *Uniloc*, 2020 U.S. App. LEXIS 13876, *6. The Federal Circuit recently unequivocally stated that the use of only conventional components ***does not*** make an invention patent-ineligible:

> The claimed compatibility [of an invention] with conventional communication systems does not render it abstract. Nor does the fact that the improvement is not defined by reference to "physical" components. To hold otherwise risks resurrecting a bright-line machine-or-transformation test, or creating a categorical ban on software patents. Our precedent is clear that software can make patent-eligible improvements to computer technology, and related claims are eligible as long as they are directed to non-abstract improvements to the functionality of a computer or network platform itself.

*Uniloc*, 2020 U.S. App. LEXIS 13876, *13-*14 (internal quotes and citations removed).

The Federal Circuit's recent *Uniloc* decision rejected similar arguments. In *Uniloc*, the defendant argued (and the district court agreed) that the claims "merely recite the observation that conventional inquiry messages can accommodate conventional polling 'using result-based functional language' and generic Bluetooth components." 2020 U.S. App. LEXIS 13876, *10. Overturning the district court, the Federal Circuit rejected that the claims "merely recite generalized steps to be performed on a computer using conventional computer activity." *Id.* at 12. The important step in the method that was attacked by the defendant was "adding to each inquiry message prior to transmission an additional data field for polling at least one secondary station." *Id.* Even though this step could be performed using an off-the-shelf, conventional processor networked with generic computers, the Federal Circuit held that this step changed "the manner of transmitting data [which] results in reduced response time by peripheral devices which are part of the system." *Id.* Like the claim at issue in *Uniloc*, claim 1 here changed the type of message transmitted that simplified the use of the system and avoids unnecessary consumption of network bandwidth. (Ex. A at col. 2:63 – col. 3:7, col. 3:39-43, col. 5:9-35; Ex. C at 6; *supra* §V(A)(1)).

## 2. The Efficiencies of the Claimed Invention Result from Improved System Functionality

The efficiencies of the claims invention are not a result of applying the abstract idea of "selective access to portions of an electronic message" to a computer. Defendant never explains how the abstract idea could be performed without a computer. (*See* D.I. 11 at 8, 11-12; *supra* §§V(A)(3), (4)). As explained in the '695 patent, "selective access to portions of an electronic message" could not be performed by hand because the best a person could do was use a ***computer*** to "create and send separate messages to those recipients of the common message and to those recipients who were to receive the particular instructions or comments." (Ex. A at col. 2:63 – col.

3:3). In other words, the problem only existed and could be solved within the realm of computers. *DDR Holdings*, 773 F.3d at 1257. The electronic messaging system therefore had to be improved.

The efficiencies and benefits of the invention are not a result of applying the method to a computer because the method did not exist outside a computer. Instead, the efficiencies and benefits are the results of improving how the system creates and sends messages with multiple variations depending on distribution. Rather than covering selective access to portions of electronic messages, the claim requires using a specific message structure and operation to access selective portions of the message. Claim 1 requires creating a message having a particular structure, creating two different address lists, sending the entire message to all recipients, determining whether the recipient selected the icon or performed the instruction, and determining if the particular recipient is on a second address list to review the comment. The steps for sending and using the specific electronic message in a specific manner are similar to the claims in *Finjan* and *Uniloc*. 879 F.3d at 1305; 2020 U.S. App. LEXIS 13876, *12. The limitations, considered both individually and as an ordered combination, therefore significantly narrow the claim scope from the alleged "abstract idea" and are patent-eligible. *Bascom*, 827 F.3d at 1350, 1352; *McRO*, 837 F.3d at 1315.

Defendant argues that improved bandwidth should not be considered because "there is no mention of 'bandwidth' in claim 1." (D.I. 11 at 16). However, the Federal Circuit rejected the identical argument made by the defendant in *Uniloc*: "Claims need not articulate the advantages of the claimed combination to be eligible." 2020 U.S. App. LEXIS 13876, *13. Regardless, on a Rule 12(b)(6) motion to dismiss, all factual inference drawn from the specification must be weighed in favor of Pivital. *Visual Memory*, 867 F.3d at 1261-62. And here the specification explains the benefits of the invention and ties it to claim language thereby demonstrating that an

inventive concept exists.  (Ex. A at col. 1:35-58, col. 2:63 – col. 3:7, col. 5:11-26); *Uniloc*, 2020 U.S. App. LEXIS 13876, *12; *Sound View Innovations, LLC v. Delta Air Lines, Inc.*, 2020 U.S. Dist. LEXIS 59025, *12 (D.Del. Apr. 3, 2020).[1]

### C.    Claim 1 is Not Representative of the Claims of the '965 Patent

Claim 1 is not representative of independent claims 6 and 11 because of the different messages and operations.  For example, claim 1 requires that a message containing a common message and a comment is sent to recipients.  (Ex. A at col. 5:11-16, 22-26).  On the other hand, claim 6 requires transmitting a common message portion without a comment to a list of recipients and transmitting a common message portion with an encrypted comment to selected recipients on a second list.  (*Id.* at col. 6: 6-10).  Claim 11 is also different because it requires that the system transmit a common message portion without a comment to recipients and transmit an encrypted comment along with an icon or instruction to a selected subset, but it does not require determining if a recipient is on a second list of selected recipients.  (*Id.* at col. 6:44-47).  As for the dependent claims, Defendant uses a word or phrase to describe the additional limitations but does not explain why they are not distinctive limitations.  For example, claims 3 and 8 require a different message structure because the icon/instruction is an applet or mini-program sent with the common message. (*Id.* at col. 5:47-48; col. 6:25-28).  Claims 2, 7, and 12 add a layer of security by requiring a password in addition to the icon or instruction in order to access the encrypted comment.  (*Id.* at col. 5:36-39, col. 6:21-24, 52-55).  Claims 4, 5, 9, and 10 require distinctive electronic messaging systems to be used for the invention.  (*Id.* at col. 5:44-48, col. 6:29-33).  These additional limitations are not inconsequential because they causally relate to improvements over the prior art.

---

[1] Defendant's collateral attack on the patent by contending that the complaint does not explain how SendGrid helps reduce the volume of messages being sent is a non sequitur.  Pivotal is not required to plead that SendGrid achieved the benefits of the claimed invention. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 n.3, 1260 (Fed.Cir. 2018).

### D.     Pivital Sufficiently Pled Marking Under 35 U.S.C. §287

Pivital is only asserting method claims against Twilio.  (D.I. 1 at ¶16).  As such, the notice provisions of 35 U.S.C. §287 do not apply.  *Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*, 559 F.3d 1308, 1317 (Fed.Cir. 2009); *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed.Cir. 1983) ("35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims."); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082-83 (Fed.Cir. 1983) (same); *Intellectual Ventures I LLC v. Symantec Corp.*, 2015 U.S. Dist. LEXIS 6399, *3 (D.Del. Jan. 21, 2015).

Regardless, Pivital has sufficiently pled compliance with the marking requirements of §287: "On information and belief, Defendant has had at least constructive notice of the '965 patent by operation of law and marking requirements have been complied with."  (D.I. 1 at ¶25).  This Court has held that this statement sufficiently alleges notice at the pleading stage of the case. *FO2GO LLC v. KeepItSafe, Inc.*, 2019 U.S. Dist. LEXIS 64505, *10 (D.Del. April 16, 2019). Furthermore, once this pleading has been made, Defendant "bears the initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to [marking under] §287." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1368 (Fed.Cir. 2017).   Because this is a Rule 12(b)(6) motion to dismiss on the pleadings, Defendant cannot satisfy its burden of production.  Defendant's request for a judgment of no pre-suit damages must be denied.

### CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.


May 28, 2020                                                 CHONG LAW FIRM

OF COUNSEL:                                        */s/ Jimmy Chong*
                                                          Jimmy Chong (#4839)
David R. Bennett                                    2961 Centerville Road, Suite 350
(Admitted *pro hac vice*)                      Wilmington, DE 19808

Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

Telephone: (302) 999-9480
Facsimile: (877) 796-4627
Email: chong@chonglawfirm.com

*Attorneys for Plaintiff Pivital IP LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 28, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.

*/s/ Jimmy Chong*
Jimmy Chong (#4839