# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PIVITAL IP LLC, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 20-254-LPS |
| ) | |
| v. ) | |
| ) | |
| TWILIO INC., ) | |
| ) | |
| Defendant. ) | |

## REPLY BRIEF IN SUPPORT OF
## TWILIO INC.'S MOTION TO DISMISS COMPLAINT

OF COUNSEL:

Michael A. Oblon
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20002
Tel: (202) 879-3939

Michael C. Hendershot
JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
Tel: (650) 739-3939

Dated: June 12, 2020
6760770 / 50135

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Tracey E. Timlin (#6469)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com
ttimlin@potteranderson.com

*Attorneys for Defendant Twilio Inc.*

# TABLE OF CONTENTS

I. PIVITAL'S ARGUMENTS CANNOT CHANGE THE '965 PATENT'S CLAIMS OR THAT THEY ARE DIRECTED TO AN ABSTRACT IDEA ........................................... 1

    A. Including an "icon or an instruction" does not alter the claims' character ..................... 1

    B. The claims recite a long established practice that predates email, not a particular "new message structure" ................................................................................................ 2

    C. Pivital's cited authority is inapplicable to its claims ...................................................... 4

    D. Pivital Fails to Distinguish *British Telecommunications* or any of Twilio's Other Analogous Cases ............................................................................................................. 6

II. PIVITAL DOES NOT IDENTIFY AN INVENTIVE CONCEPT AT *ALICE* STEP TWO AND ITS RELIANCE ON *UNILOC* IS MISPLACED ..................................................... 8

III. PIVITAL'S OWN ALLEGATIONS CONFIRM THE ABSTRACT NATURE OF THE CLAIMS ............................................................................................................................... 9

IV. METHOD CLAIM 1 IS REPRESENTATIVE AND DISMISSAL OF PIVITAL'S SYSTEM CLAIMS IS APPROPRIATE ................................................................................. 10

V. CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ................................................................................. 7, 8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ................................................................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................... 7

*British Telecomms. PLC v. IAC/InterActiveCorp*,
   381 F. Supp. 3d 293 (D. Del. 2019) *aff'd*, No. 2019-1917, 2020 WL 2892601
   (Fed. Cir. June 3, 2020) ............................................................................................ 4, 6, 7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018) ....................................................................................... 5

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d at 1258 (Fed. Cir. 2014) ................................................................................... 6

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ......................................................................................................... 8

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ................................................................................ 1, 2, 8

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) .................................................................................... 4, 6

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) .................................................................................... 7, 8

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) .................................................................................... 4, 5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ....................................................................................... 4

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) ............................................................................................... 7

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ................................................................................ 7, 8

*TrackTime, LLC v. Amazon.com, Inc.*,
    C.A. No. 18-1518-MN, 2019 WL 2524779 (D. Del. June 19, 2019) ................................... 10

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................................................ 2

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020) ...................................................................................... 8, 9

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017) .......................................................................................... 6

**STATUTES**

35 U.S.C. § 101 ............................................................................................................. 1, 4, 8

Pivital repeatedly asserts in its Opposition that its claims are directed to a "structure and operation of a new electronic message." (D.I. 16.) But the asserted method claims do not recite any new "message structure" and a user's "operation" of a message system is an abstract concept. The strain of cases on which Pivital relies involve technical inventions that improve the functioning of a computer itself—something that Pivital's "invention" does not do. Since the claimed steps recite nothing more than an abstract concept, they are invalid under 35 U.S.C. § 101.

## I. PIVITAL'S ARGUMENTS CANNOT CHANGE THE '965 PATENT'S CLAIMS OR THAT THEY ARE DIRECTED TO AN ABSTRACT IDEA

Pivital asserts that claim 1 is directed to more than the abstract concept of providing selective access to portions of an electronic message, but its arguments are belied by the claim's generic steps. The claimed method is directed to creating a message, creating a comment, creating first and second address lists, delivering the common message and comment to recipients on the first address list, and determining who can review the comment based on the second address list. These are steps that a person can do, either in one's mind or with pen and paper, and recite generic practices that were long established before electronic mail.

### A. Including an "icon or an instruction" does not alter the claims' character

Pivital first contends that the abstract concept that Twilio identified ignores "additional features" recited in the claim, such as "transmitting an icon or instruction." (D.I. 16 at 8.) Pivital misses the point legally and factually. Performing *Alice*'s first step of identifying what a claim is directed to does not require incorporating every limitation, otherwise there would be no need for the second step of determining whether the claim recites "something more" than the abstract idea itself. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (explaining that *Alice* step one looks at the "focus" of the claims and their "character as a whole," while step two "look[s] more precisely at what the claim elements add") (internal quotation omitted). For

example, in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014), the Federal Circuit determined that six of the eleven steps of the claim at issue pertained to the abstract idea to which the claim was directed. The court separately analyzed the remaining five limitations in *Alice* step two. *See id.* Since the remaining limitations of that claim were found to be only "routine, conventional activity"—just like with Pivital's claims—it was held invalid. *Id.*

Moreover, the step of "transmitting an icon or instruction with said common message portion" does not make the claimed method any less abstract. (D.I. 1, Ex. A at 5:27-28 [hereinafter '965 patent].) The specification adds only that the icon "accompan[ies]" the message and that a user can "select the icon" or enter a password to review the encrypted comment. (*Id.* at 4:11-15.) Of course, it is well-known to prompt a user to request information or to elicit a password. This sparse description in the specification confirms that the icon or instruction does not change claim 1's "character as a whole." *Elec. Power Grp.*, 830 F.3d at 1353 (internal quotation omitted).

### B. The claims recite a long established practice that predates email, not a particular "new message structure"

Pivital argues claim 1 is not abstract because it provides "a new way of sending customized messages using a new message structure and operation that is more convenient, more efficient, and reduces bandwidth issues." (D.I. 16 at 8.) Pivital's argument fails for three main reasons.

First, claim 1 does not define a "message structure," let alone a new one. It refers generically to a user "creating an electronic message" with a "common message portion" and the user then "creating a comment to said common message portion." ('965 patent, 5:11-13.) These are actions that a user performs, not a "structure." The claim does not require that there is any specific configuration for the comment, such as attaching, embedding, linking, or associating it in some other way with the message. None of the other claimed steps provides a structure, either. There are steps by which the user creates a "first address list" of all recipients and a "second

address list" that specifies a subset of recipients, but there is no indication as to whether the information from either address list is incorporated into the message or otherwise transmitted. (*Id.* at 5:18 20.) Indeed, a user could prepare the lists by hand. The claim also recites that the comment is "encrypted," but does not specify a type of encryption or any purported technological advancement. (*Id.* at 5:23.) Thus, the claimed steps just pertain to the abstract concept by which a user provides selective access to portions of an electronic message. This is hardly a new practice. As explained in Twilio's Opening Brief, tailoring portions of a form communication to particular subsets of recipients long predates email, as recognized by numerous courts. (D.I. 11 at 8-12.)

Second, claim 1 does not recite an "operation that is more convenient, efficient and reduces bandwidth issues." Pivital cites to the brief discussion in the patent's Background section about how, in the past, a company president might have to send an email to all employees and a second email to management with certain comments. ('965 patent, 1:18-42.) The patent then concludes that "more convenient and efficient messaging systems … are desirable," but such an aspiration does not alter what is recited in claim 1. (*Id.* at 1:43-46.) Claim 1 requires that the message and the encrypted comment be sent to ***all*** recipients on the first address list, including unnecessarily to recipients that are ***not*** permitted to access the comment because they are not on the narrower second address list. (*Id.* at 5:17-35.) Pivital's generalized conclusions about network efficiency and "bandwidth issues" cannot be squared with nor save a claim that, by its own terms, requires sending superfluous comments to multiple recipients that are not intended to ever access them. To the extent Pivital is arguing about purported efficiency resulting from a user having to prepare and send fewer messages, neither this problem nor Pivital's purported solution is unique to computer systems or electronic messages and attempting to limit a long established practice to a particular

technological environment, such as email, is insufficient under *Alice*. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

Third, as detailed further below, Pivital cannot meaningfully distinguish the decision in *British Telecommunications*, which dealt with strikingly similar claims and the sort of efficiency arguments Pivital now advances. *British Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 310-12, 319 (D. Del. 2019), *aff'd*, No. 2019-1917, 2020 WL 2892601 (Fed. Cir. June 3, 2020). As Pivital acknowledges, that case held that improvements "such as reducing waste of processing resources, storage, and bandwidth" were not inventive because they were "generic to any communication systems that employs a filtering feedback mechanism, whether conventional or computer implemented." (D.I. 16 at 12-13.) Sending a lower volume of messages is just the type of purported improvement that this Court explained is "generic to any communication systems." 381 F. Supp. 3d at 309. Just as preparing fewer hard copy letters (or customizing a common form for certain recipients) would improve efficiency, so too would sending fewer emails.

## C. Pivital's cited authority is inapplicable to its claims

Pivital relies on a familiar line of Federal Circuit cases in which the court upheld patent claims under Section 101 at *Alice* step one because they were directed to technological improvements "to computer functionality itself." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). But these cases are inapposite. Claiming a long established "solution" to a problem that predates electronic communications does not become non-abstract or a technological improvement to how a computer operates simply because a claim recites it in the context of electronic communications. None of Pivital's authority holds otherwise.

For example, Pivital likens claim 1 to the claim at issue in *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). There, the claim covered a method of "generating . . . [a] security profile that identifies suspicious code" in a downloaded application, utilizing a new

4

type of computer file that permitted a fundamentally new type of virus scanning. *Id.* The Federal Circuit held that the claimed method did "a good deal more" than conventional virus scanning because it was a "behavior-based virus scan" that required a "newly generated file" to identify even "*potentially* hostile operations." *Id.* at 1304 (emphasis in original). Prior to this invention, virus scan programs did not and could not identify potential threats, only previously-identified viruses. *Id.* As such, the Federal Circuit reasoned that the claimed method was not abstract because it "employs a new kind of file that enables a computer security system to do things it could not do before." *Id.* at 1305.

Claim 1 of the '965 patent involves no such improvement to computer functionality. At most, the claim involves a method of rearranging data—sending an encrypted comment with a common message rather than separately. While consolidating data may lead to certain efficiencies (on a computer or otherwise), this is not the type of functionality that set *Finjan* apart. Pivital's claimed method does not allow the computer to "do things it could not do before." *Id.* Indeed, the steps rely on conventional computer components operating in their standard ways. The patent does not state, nor does Pivital allege, that prior to this "invention" a computer was unable to send messages, send messages with attachments, or encrypt (and decrypt) messages or attachments. That some recipients are allowed to decode the attached comment does not create new computer functionality.

The other cases on which Pivital relies similarly involved fundamental improvements to the computer functionality itself and were necessarily rooted in computer technology. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) (claims directed to "'displaying an application summary window while the application is in an unlaunched state,' . . . concepts [that] . . . are specific to devices like computers and cell phones," rather than

5

merely an "index" as defendant argued); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (claims directed to an improved computer memory system with programmable operational characteristics defined by the processor that obviated the need to design a separate memory system for each type of processor); *Enfish*, 822 F.3d at 1336 (claims addressed to a new self-referential memory table specifically recited in the claims that was "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory"); *DDR Holdings*, 773 F.3d at 1258 (claims directed to a particular technological solution to address a problem arising uniquely in the context of the "ephemeral nature" of the Internet and that did not include a non-virtual analogue). Twilio does not dispute that claims directed to specific technological solutions that improve how a computer functions may be patent eligible. But the '965 patent's claims are not that. Twilio's example of a hard-copy memorandum highlights that problems and solutions regarding message handling are long-established issues that predate computers, and simply applying a known solution to a computer does not make it "rooted in technology." (*See* D.I. 11 at 11-12.) Nor does the mere fact that a claim references "electronic messages" mean that a "problem only existed and could be solved within the realm of computers" as Pivital contends. (*See* D.I. 16 at 18.)

> **D. Pivital Fails to Distinguish *British Telecommunications* or any of Twilio's Other Analogous Cases**

Pivital's attempts to distinguish cases from the Federal Circuit and this Court holding similar claims to be abstract brush over the details of those cases. Pivital repeatedly invokes its conclusion that its claims are "unconventional" and require a "message structure."

Pivital's treatment of *British Telecommunications* is illustrative. The claims in *British Telecommunications*, like claim 1 of the '965 patent, were directed to the abstract ideas of distributing information based on feedback from people receiving that information, tailoring

6

content to a user, and providing restricted access to resources. *See* 381 F. Supp. 3d at 310-12, 319. As an example, one of the patents at issue claimed a method of storing "instructions enabling a data processor to determine subsets of members to whom a data message is to be transmitted," "select[ing] a first distribution rule and send[ing] a first data message to a first subset of members" over a data network, "receiv[ing] feedback data," and "sending a second data message to a second, different, subset of members" over the network. *Id.* at 308-09. Claim 1 of the '965 patent similarly recites a method of sending messages and determining who receives what content.

Pivital attempts to distinguish *British Telecommunications* by repeating its conclusion that "claim 1 uses unconventional electronic message structure with new features and operations that improved the operation and efficiency of prior art electronic mail system." (D.I. 16 at 12.) But the court in *British Telecommunications* rejected that same argument when analyzing claims that were strikingly similar to claim 1 of the '965 patent. The Court need not accept Pivital's conclusory statements that claim 1 is "unconventional." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Pivital's other criticisms of Twilio's cases are similarly unsupported. Continuing with its same theme, Pivital argues that its invention's "specific structure" sets it apart from the functional claims in *Ericsson*, *Affinity Labs*, and *Prism Technologies*. (*See, e.g.*, D.I. 16 at 11.) But the only "structure" that Pivital can muster from claim 1 is an "electronic message containing the common portion, encrypted comment, and the icon or instruction." (*Id.* at 9.) The claim does not state how these features are configured, how the comment is encrypted, or what happens after a user is "allowed" to decode the comment. ('965 patent, 5:21-35.) Thus claim 1 is similar to other ineligible claims directed to simply "permitting access" or providing that "requests are made and then granted." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir.

7

2020); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017). Pivital next argues that claim 1 "solv[es] a specific problem with electronic messaging that created a more convenient and efficient messaging system." (D.I. 16 at 11.) But the claims in *Ericsson*, *Affinity Labs*, and *Prism Technologies* were not ineligible because they failed to improve efficiency, but because they used generic components to implement an abstract concept. *See, e.g.*, *Ericsson,* 955 F.3d at 1330 ("Even assuming that this collection of elements led to a more efficient way of controlling resource access . . . 'merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.'").[1]

## II. PIVITAL DOES NOT IDENTIFY AN INVENTIVE CONCEPT AT *ALICE* STEP TWO AND ITS RELIANCE ON *UNILOC* IS MISPLACED

In its step two analysis, Pivital merely repeats its step one argument about "message structure" and efficiencies and claims they are "unconventional." After setting up a straw man—Twilio is plainly not arguing that "software claims are *per se* ineligible"[2]—Pivital relies heavily on *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020). Pivital overlooks a foundational point unique to *Uniloc*. Indeed, *Uniloc* highlights why Pivital's claims are ineligible.

As a threshold matter, Pivital overlooks that the parties in *Uniloc* **agreed** that the claims' purported improvement was "a patent-eligible improvement to computer functionality." *Id.* at 1308. The dispute was limited to whether the claims were "sufficiently directed to this purported

---

[1] Finally, Pivital tries to distinguish claim 1 from the claims in *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 Fed. App'x 1014 (Fed. Cir. 2017) by arguing that the Patent Office held the claim to be novel. (D.I. 16 at 12.) But the Supreme Court has long held that novelty is irrelevant to a Section 101 analysis. *See Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981).

[2] Twilio's position that claims reciting generalized steps to be performed with conventional computer activity and off-the-shelf components are ineligible is in accord with settled law. *See Elec. Power Grp.*, 830 F.3d at 1355 ("We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea." (internal quotation omitted).)

improvement." *Id.* And contrary to Pivital's reliance on *Uniloc* for *Alice* step two, the *Uniloc* court expressly noted it "need not proceed to the second step of *Alice*." *Id.* at 1309.

Moreover, the *Uniloc* decision's analysis and holding are no help to Pivital. *Uniloc* found the claims were directed to "the reduction of latency experienced by parked secondary stations in communication systems." *Id.* at 1307. This was not based on general claims about improved efficiency and bandwidth, but rather the court explained the invention was addressed to a particular problem arising in communication systems resulting from battery-operated secondary stations entering a "park" mode and ceasing active communications to conserve power. *Id.* at 1305, 1308. The *Uniloc* court further explained that the claims at issue recited the specific technique that fundamentally changed how the system polled devices and that the patent taught was an unconventional solution. *Id.* at 1308. That the court recognized the claimed invention was "compatible with conventional communication systems" is not noteworthy, the point of the invention was to modify the operations and functionality of such systems themselves. *Id.* at 1309.

Here, the claims do not fundamentally alter how a computer system functions and the problem they purport to address (too many messages) did not arise uniquely in the context of a computer system. Rather, Pivital's claims "merely recite generalized steps to be performed on a computer using conventional computer activity." *Id.* at 1308.

## III. PIVITAL'S OWN ALLEGATIONS CONFIRM THE ABSTRACT NATURE OF THE CLAIMS

Pivital's infringement allegations against Twilio in the Complaint undermine its insistence that the '965 patent claims are directed to a "new message structure." Pivital alleges that its claims encompass Twilio's SendGrid platform based on a "marketing email" that includes a "template message" with "dynamic components of the message," for which Pivital points to a recipient's

9

name and address. (D.I. 1, ¶¶ 18-21.) This is not a "new" or unconventional "message structure." These are long established features of form letters and mail-merge programs.

## IV. METHOD CLAIM 1 IS REPRESENTATIVE AND DISMISSAL OF PIVITAL'S SYSTEM CLAIMS IS APPROPRIATE

Pivital does not defend that alleging, *on information and belief*, compliance with marking requirements is sufficient. (D.I. 16 at 20.) Adequately pleading marking is required. Pivital now represents "it is only asserting method claims against Twilio" (D.I. 16 at 20), but has not so amended its Complaint. Thus, dismissal of its claims for pre-suit damages, or at a minimum, dismissal of system claims 6-12 is appropriate. Indeed, Pivital does not contend it has—or intended to—state a claim for relief on these system claims.

As to method claims 1-5, Pivital's argument that claim 1 is not representative misapprehends the law. It does not matter that dependent claims 2-5 recite "distinctive limitations." (D.I. 16 at 19.) All dependent claims must add limitations. Under Pivital's view, no independent claim could ever be representative of a dependent claim. That is not the law. A claim is representative if its character as a whole is directed to the same concept as other claims. *TrackTime, LLC v. Amazon.com, Inc.*, C.A. No. 18-1518-MN, 2019 WL 2524779, at *3 (D. Del. June 19, 2019). That dependent claims 2-5 add conventional bells and whistles like a password or a server does not alter what the claims are directed to and Pivital does not meaningfully contend otherwise.[3]

## V. CONCLUSION

For the foregoing reasons, Twilio respectfully requests that the Court dismiss Pivital's Complaint in its entirety with prejudice.

---

[3] For these same reasons, Twilio maintains that claim 1 is also representative of claims 6-12 should the Court decline to dismiss those claims in view of Pivital's representation that it is not asserting them. The differences Pivital points to do not alter that those claims, like claim 1, are directed to selective access to portions of an electronic message.

OF COUNSEL:

Michael A. Oblon
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20002
Tel: (202) 879-3939

Michael C. Hendershot
JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
Tel: (650) 739-3939

Dated: June 12, 2020
6760770 / 50135

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Tracey E. Timlin (#6469)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com
    ttimlin@potteranderson.com

*Attorneys for Defendant Twilio Inc.*